BELL, SHIVAS & FASALO, P.C.
Joseph J. Bell, Esq. (016881985)
150 Mineral Springs Drive
P.O. Box 220
Rockaway, NJ 07866
(973)442-7900
Attorneys for Plaintiff Christina M. Klemser

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHRISTINA M. KLEMSER,

      Plaintiff,

      v.

EVONIK CYRO LLC, EVONIK CYRO
LLC as successor in interest
to CYRO INDUSTRIES and DEGUSSA
CYRO INDUSTRIES, STEVE
FERRERO, ROBERT SULLIVAN,
JOHN/JANE DOES #1-10
individually and in their
corporate capacities, ABC
CORPS. #1-10,

      Defendant(s).

Civ. No.:

EEOC Case No. 551-2016-01365

Related:

EEOC Case No. 524-2016-01008

(dismissed)

EEOC Case No. 524-2017-00139

(pending)

## PLAINTIFF'S COMPLAINT

Plaintiff Christina Klemser ("Plaintiff"), residing at 166 Westcliff Drive, Greenbank, WA 98253, by way of Complaint against

Evonik CYRO LLC, Evonik CYRO LLC as successor in interest to CYRO Industries and Degussa CYRO Industries (collectively, "CYRO"), Steve Ferrero, Robert Sullivan, and John/Jane Does #1-10, individually and in their corporate capacities, and ABC Corps. #1-10, (collectively, "Defendant(s)"), hereby states as follows:

## INTRODUCTION

1.  This matter involves a continuous pattern of wrongful discrimination and retaliation by CYRO against Plaintiff, as a result of the negligent, intentional, wrongful, wanton, defamatory, and unlawful conduct by Defendants in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., the Federal Equal Pay Act ("EPA"), the terms of her contract/written employment materials governing employment, and common law claims under New Jersey law. This Complaint is filed pursuant to a Notice of Suit Rights dated February 8, 2017 issued in EEOC Charge No. 551-2016-01365.

## JURISDICTION

2.  The Court has federal question jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331. Plaintiff's causes of action arise primarily under federal law.

3.  The Court may also exercise supplemental jurisdiction over Plaintiff's State of New Jersey statutory and common law claims pursuant to 28 U.S.C. § 1367(a) because those arise from

the same nucleus of operative facts set forth in Plaintiff's Complaint.

4.    Plaintiff's written contract of employment dated on or about August 17, 1992, her date of hire, between Plaintiff and CYRO Industries, arose in New Jersey.  This agreement contained, among other clauses, a non-compete clause, confidentiality clause, and an intellectual property clause.

5.    Plaintiff lived in New Jersey for the first fifteen (15) years of her employment with CYRO, and held the positions of inside and later outside sales representative in New Jersey, before being becoming a West Coast Sales Representative after her husband's job was transferred to the West Coast.  She currently resides in the State of Washington, near Seattle, but continues to travel to CYRO's corporate headquarters in New Jersey for training, meetings, and performance reviews and is in constant contact with CYRO's corporate headquarters via phone, fax, email, computer, and mail.

## THE PARTIES

6.    Plaintiff Christina Klemser ("Plaintiff") is an individual and current employee of Evonik CYRO LLC, at its office located near downtown Seattle, Washington.  Plaintiff is presently sixty-three (63) years of age.  Plaintiff has had an exemplary twenty-five (25) year career at Evonik CYRO LLC.

7.   Defendant Evonik CYRO LLC, successor in interest to CYRO Industries and Degussa CYRO Industries ("CYRO"), is a New Jersey Corporation with headquarters located at 299 Jefferson Road, Town of Parsippany, County of Morris, State of New Jersey 07054.   The company was founded in 1976 and is listed on the S&P Stock Market Exchange.   Evonik CYRO LLC produces and supplies custom chemicals, acrylic monomers, polymers, and sheets in the United States and abroad as part of the Global S&P Market.

8.   Upon information and belief, and at all relevant times stated herein, Defendant Steve Ferrero ("Defendant Ferrero") has been an employee at CYRO in the position of Regional Markets Manager during the time of Plaintiff's employment.

9.   Upon information and belief, and at all relevant times stated herein, Defendant Robert Sullivan ("Defendant Sullivan") is an employee and currently Director of Operations at CYRO.

10.   Defendants John Does #1-10 and Jane Does #1-10 ("Defendants Does") are as yet unidentified parties who are employees and/or agents of CYRO and were engaged in discrimination and retaliation against Plaintiff and/or aiding and abetting in any or all of the acts alleged herein.

11.   Defendants ABC Corps. #1-5 ("Defendants ABC Corps.") are any corporations which may be derivatively liable for discrimination, retaliation, and/or other alleged tortious or negligent acts against Plaintiff.

4

## FACTS COMMON TO ALL COUNTS

12.  Plaintiff's contract/written employment materials with CYRO are dated on or about August 17, 1992 and requires that Plaintiff be amenable to working where CYRO so directs and requires, in order to fulfill her responsibilities for the Company.

13.  Plaintiff was hired as a Logistics Specialist. However, in 1999, she was offered the position as the East Coast Inside Sales Representative. During this time period, she obtained her Bachelor's Degree in Business Administration and Master's Degree in Change Management, graduating in 2005 and 2006 respectively from the College of Saint Elizabeth in Morristown, New Jersey.

14.  In 2006, Plaintiff was promoted to Outside East Coast Sales Representative. In or about July 2007, Plaintiff moved to the West Coast. At or about this time, CYRO Industries was purchased by its parent company, DeGussa CYRO Industries, Germany.

15.  For the last nine (9) years, CYRO has employed Plaintiff as a West Coast Sales Representative. Her position involves extensive travel and working at home. In or about 2009, CYRO was self-described in a sales brochure as:

> Company Information
> Evonik Cyro LLC is an Evonik Degussa Corporation group company. Headquartered in Parsippany, NJ, Evonik Cyro is a leading manufacturer of acrylic sheet and molding compounds, and bulk and performance monomers. Cyro manufactures and markets its acrylic sheet and molding compounds under the ACRYLITE® trade name in the Americas. These same products are manufactured and marketed under the PLEXIGLAS® trade name on the

> European, Asian, African and Australian continents.
> Evonik Industries is the creative industrial group from
> Germany which operates in three business areas:
> Chemicals, Energy and Real Estate.
> Evonik is a global leader in specialty chemicals, an
> expert in power generation from hard coal and renewable
> energies, and one of the largest private residential
> real estate companies in Germany. Our strengths are
> creativity, specialization, continuous self-renewal,
> and reliability. Evonik is active in over 100 countries
> around the world. In its fiscal year 2008 about 41,000
> employees generated sales of about Euro 15.9 billion and
> an operating profit (EBITDA) of more than Euro 2.2
> billion.

(A copy of this sales brochure is annexed hereto as Exhibit A.)

These products are used in the following sample industries:

architectural, automotive & transportation, lighting systems,

medical technology, sanitary ware, and solar.  Id.

16.  Plaintiff has garnered a number of sales awards for her

performance in this position.  In 2010, she was awarded the Most

Significant Customer Success Award for successfully generating the

3form business account, a multi-million-dollar account.

17.  Plaintiff subsequently developed 3form into one (1) of

CYRO's largest direct customers.

18.  Plaintiff has subsequently won several sales awards,

including: the 2010 Specialty Sales Achievement Award; the 2012

Elite Club Sales Award; the 2013 Elite Club Sales Award; and the

2013 Impact Sales Award.

19.  Plaintiff's current job title is Market Development

Manager.

20.    During Plaintiff's nine (9) years as a West Coast Sale Representative, Plaintiff has had seven (7) different managers. Each change in manager also resulted in changes to Plaintiff's area of territorial coverage and assignments.

21.    In each such instance prior to April 2016, Plaintiff was able to adapt to such changes without any problems, as all such changes had involved a fair and equitable division of the western states' accounts and profitability territory.    Plaintiff has historically received satisfactory to strong performance evaluations.    Plaintiff met her sales goals in 2015, and in fact received the largest bonus of her career in 2015.

22.    However, Plaintiff's working conditions began to change in or about 2016, in a manner that negatively and adversely affects the terms of her employment, all in a manner that is predicated upon unlawful age and gender discrimination.

23.    After securing the yearlong commitment to develop materials for 3form as a client, CYRO attempted, in or about 2009, to remove Plaintiff as the account manager and give the account ownership to male co-worker Robert Sullivan.    Her then-current manager, Steve Barratt, lobbied to move the account.

24.    Other CYRO co-workers supported Plaintiff, who had cultivated and developed this major account.

25.    Therefore, at that time Plaintiff continued to maintain the 3form account.

26.   Thereafter, what followed was a continuous pattern of work place bullying and verbal abuse by Manager Steve Barratt towards Plaintiff.

27.   Plaintiff complained to no avail.

28.   In February 2010, Plaintiff was told she would not be attending a major meeting with 3form and that Defendant Sullivan would go in her place.

29.   Despite being top sales performer in March 2010, Plaintiff, at a meeting at New Jersey headquarters, received a poor performance evaluation.

30.   By 2012, Plaintiff was receiving negative comments on her employee training survey from her supervisors and managers. Plaintiff was also developing hip problems, making her extensive traveling for her employer more difficult.  Hip surgery required a three (3) month period of disability.

31.   In 2015, Plaintiff was transferred to another group, which had the effect of freeing up co-workers' time to pursue another account.

32.   By 2016, Plaintiff's assignments were changed in such a way that it would be impossible for any person in her position to meet the designated sales goals.  Plaintiff was also denied a performance review by the actions of Defendant Sullivan, who also played a role in decisions that denied Plaintiff training necessary to achieve her goals.

33.   At the same time, younger male employees were given preferential treatment and assigned sales territories that would result in better sales, and therefore better performance and salary.

34.   Plaintiff's assignments were reduced to less than three percent (3%) of all available reassigned accounts for the newly structured sales territory.   Plaintiff's largest account, 3form, was transferred to a younger male co-worker, John DeMatos.

35.   At this time, other male employees were promoted to Team Lead positions as Plaintiff's designated territory doubled geographically, but with lower opportunity areas.

36.   Plaintiff complained to Regional/Markets Manager Steve Ferrero about the impact that this disparate treatment could have on her employment and the customer business.   However, instead of allowing an exception for Plaintiff to continue working with her previously-assigned territories and responsibilities, Steve Ferrero continued, and continues to this day, to pursue actions where other employees outside of Plaintiff's protected groups and suspect classifications are not so subjected.

37.   In or about April 2016, Plaintiff was not allowed an exception to retain a large account, while other employees have been provided exceptions to retain specific requested accounts.

38.   More recently, Plaintiff has continued to experience problems with her performance review.   In or about February 2017,

Plaintiff received a performance review for the previous year that gave her a substandard evaluation.[1]

39.   Such evaluation was compiled by Defendant Ferrero and was inaccurate for several reasons: (1) the review failed to account for Plaintiff's decreased sales numbers based on the 3form account being taken from her as well as her subsequent reassignment to a geographic sales territory with significantly lower population and projected sales potential; (2) the review failed to account for the first three (3) months of the year, when she was working on the 3form account and within her previously-assigned geographic sales territory, wherein she had generated substantially stronger sales figures; and (3) the review failed to account for the fact that Plaintiff was out of work for two (2) weeks in November 2016 and unable to travel in December 2016 while on short-term disability.

40.   Essentially, Plaintiff received a review characterizing her work for calendar year 2016 as substandard even though such review failed to give her credit for her work during the early part of the year and failed to account for time off for disability.

41.   Plaintiff is aware of at least one (1) other similarly-situated male employee who endured substantial changes to assigned

---

[1] The events in 2017 as referenced in Paragraphs 37-42 are the subject of an ongoing EEOC claim, Case No. 524-2017-00139, as referenced in the Case Caption, are included herewith only for the purpose of setting forth ongoing and continuous wrongful conduct.

accounts and geographic sales territory, who nevertheless received two (2) performance reviews, accounting for the different sales accounts and territories assigned to him.

42. Despite numerous requests to receive at least an additional performance review to account for her previous assignments before such were changed during 2016, Defendants have refused to provide the same opportunity to Plaintiff as to her male counter-parts.

43. As a result, Plaintiff has been placed on a performance review plan based upon erroneous information. Upon information and belief, said actions have been undertaken in order to subject Plaintiff to continued acts of discrimination, retaliation for filing complaints with the EEOC, and to serve as pretext for adverse employment actions against Plaintiff.

**FIRST COUNT**
**(Title VII of the Civil Rights Act of 1964 - Age Discrimination)**

44. Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

45. Plaintiff has been subjected to age discrimination by her fellow co-workers and suffered adverse employment consequences on the basis of her age and in retaliation for complaining about the discriminatory conduct of her co-workers.

46. The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's

11

rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

### SECOND COUNT
**(Title VII of the Civil Rights Act of 1964 – Gender Discrimination)**

47.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

48.   Plaintiff has been subjected to gender discrimination by her fellow co-workers and suffered adverse employment consequences on the basis of her gender and in retaliation for complaining about the discriminatory conduct of her co-workers.

49.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

### THIRD COUNT
**(Title VII of the Civil Rights Act of 1964 – Retaliation)**

50.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

51.   Plaintiff has suffered adverse employment consequences in retaliation for complaining about the discriminatory conduct of her co-workers.  Plaintiff has engaged in a protected activity by making such complaints of unlawful behavior of age and gender discrimination to her supervisors at Defendant CYRO.

52.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**FOURTH COUNT**
**(Title VII of the Civil Rights Act of 1964 – Hostile Working Environment)**

53.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

54.   Throughout her employment with Defendants, Plaintiff was victimized by a work environment that was hostile toward female employees and older employees.   Despite Plaintiff's reports concerning her harassment, which occurred in a severe and pervasive manner, no effective actions or corrective measures were taken by Defendants to protect Plaintiff from being treated in a derogatory manner, harassed, humiliated, and intimidated by her Co-workers.

55.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**FIFTH COUNT**
**(Age Discrimination in Employment Act of 1967)**

56.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

57.   Plaintiff has been subjected to age discrimination by her fellow co-workers and suffered adverse employment consequences on the basis of her age and in retaliation for complaining about the discriminatory conduct of her co-workers.

58.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.

### SIXTH COUNT
### (Americans with Disabilities Act of 1990)

59.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

60.   Plaintiff has been subjected to disability discrimination by her fellow co-workers and suffered adverse employment consequences on the basis of her disability and failure to provide reasonable accommodations.

61.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

### SEVENTH COUNT
### (New Jersey Law Against Discrimination – Age Discrimination)

62.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

63. Plaintiff has been subjected to age discrimination by her fellow co-workers and has suffered adverse employment consequences on the basis of her age and in retaliation for complaining about the discriminatory conduct of her co-workers.

64. The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### EIGHTH COUNT
**(New Jersey Law Against Discrimination – Gender Discrimination)**

65. Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

66. Plaintiff has been subjected to gender discrimination by her fellow co-workers and has suffered adverse employment consequences on the basis of her gender and in retaliation for complaining about the discriminatory conduct of her co-workers.

67. The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### NINTH COUNT
**(New Jersey Law Against Discrimination – Disability Discrimination)**

68. Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

69.   Plaintiff   has   been   subjected   to   disability discrimination by her fellow co-workers and has suffered adverse employment   consequences   on   the   basis   of   her   disability, Defendants' failure to provide reasonable accommodations for same, and   in   retaliation   for   complaining   about   the   discriminatory conduct of her co-workers.

70.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### TENTH COUNT
### (New Jersey Law Against Discrimination - Retaliation)

71.   Plaintiff   repeats   and   incorporates   each   and   every preceding paragraph as if set forth at length herein.

72.   Through an on-going and continuous pattern CYRO and its employees have systematically removed Plaintiff's key account, placed her in a territory where it is impossible for her to compete, and subjected her to verbal and written criticism, all of which has escalated as she has persisted in pursuing investigation of her claims against CYRO and its employees.

73.   The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### ELEVENTH COUNT
**(New Jersey Law Against Discrimination – Hostile Working Environment)**

74.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

75.    Throughout her employment with Defendants, Plaintiff was victimized by a work environment that was hostile toward older, disabled and female employees.    Despite Plaintiff's reports concerning her harassment, including enduring derogatory written and verbal comments, which occurred in a severe and pervasive manner, no effective actions or corrective measures were taken by Defendants to protect Plaintiff from being treated in a derogatory manner, harassed, humiliated, and intimidated by her co-workers.

76.    The actions described hereinabove, all of which were performed in willful, wanton and reckless disregard of Plaintiff's rights under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### TWELFTH COUNT
**(New Jersey Law Against Discrimination – Aiding and Abetting)**

77.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

78.    Defendants, based upon the allegations set forth above, have aided, abetted, incited, compelled, and/or coerced the doing of acts, against Plaintiff, that are forbidden under the Law

Against Discrimination, in violation of, among other things N.J.S.A. 10:5-12(e).

## THIRTEENTH COUNT
### (New Jersey Law – Intentional Infliction of Emotion Distress)

79.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

80.    Upon learning through Plaintiff's reports that she was subjected to age, gender and disability discrimination and afforded unequal pay, Defendants engaged in a concerted campaign to intentionally inflict emotional distress upon Plaintiff. Plaintiff was made to watch as her key account was removed, given to a younger, less experienced sales person, and then later Defendant Ferrero reassigned it to himself.  At the same time, Plaintiff's sales territory was changed to less populous states that in some instances did not contain the key distributors and distribution channels necessary for Plaintiff to sell the new product lines she was requested to subsequently develop.

81.    As a direct and proximate result, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological and financial injuries, losses, and tribulations.

## FOURTEENTH COUNT
### (New Jersey Law – Negligent Infliction of Emotional Distress)

82.    Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

83.   Upon learning about Plaintiff's reports that she was subjected to age, gender and disability discrimination, and afforded unequal pay, Defendants negligently or recklessly inflicted emotional distress upon Plaintiff by allowing continued harassing and derogatory comments to be directed at Plaintiff by fellow employees, removing Plaintiff's key accounts and passing them to younger male sales associates, giving her a poor performance review as a "pretext" for diminishing her work reputation and becoming increasingly hostile as Plaintiff reported such conduct.

84.   As a direct and proximate result of this negligence, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological and financial injuries, losses, and tribulations.

## FIFTEENTH COUNT
**(New Jersey Law - Vicarious / Derivative Liability)**

85.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

86.   Each and every act or omission alleged in this Complaint to have been committed or omitted by an individual, or a discrete group of individuals, was committed or omitted using the authority given to the person alleged to have committed or omitted the act by the required officers or other supervisors and persons with

management authority vested upon them by virtue of their employment with Defendant CYRO.

87.   Defendant CYRO and its officers and employees, and Defendants ABC Corps. (#1-10) and their officers and employees, had a duty to Plaintiff to properly hire, supervise and monitor its employees, to ensure that illegal behavior was not committed, condoned or permitted to continue, either negligently or intentionally.

88.   As a direct and proximate result, of Defendants' acts and omissions, Plaintiff has and will continue to suffer permanent and irreparable physical, psychological and financial injuries, losses and tribulations.

### SIXTEENTH COUNT
### (Federal Equal Pay Act)

89.   Plaintiff repeats and incorporates each and every preceding paragraph as if set forth at length herein.

90.   Plaintiff is a woman doing the same job as younger male counterparts, but receiving less compensation for it.   Other employees of CYRO have benefitted from the removal of Plaintiff's key accounts, then given to younger male beneficiaries.

91.   The removal of her key accounts also served to lower her numbers such that she was given a lower review and placed on a performance rehabilitation plan, despite the fact that she had never before received such a review, all based on the fact that

her most lucrative accounts were removed and given to younger male employees, and her territory was redistributed amongst younger male employees as well, resulting in loss of compensation for her and a gain in compensation and success rates for her male counterparts.

92.   Unequal pay was given for the performance of work by CYRO male employees substantially equal and similar to the work performed by Plaintiff to her detriment.   A comparison of Plaintiffs responsibilities versus her male counterparts at CYRO bears this out, as does sales charts.

93.   The work performed by males of similar educational background, conduct and skill, and resulting in similar quality and production through similar skill, effort and responsibility and under similar working conditions has yielded higher pecuniary gain and benefits for similarly situated male counterparts at CYRO.

94.   Thus, a climate of discrimination exists for women employees of CYRO, including, Plaintiff, in violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d) et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly, severally, or in the alternative for equitable damages, including but not limited to, lost wages and back pay, benefits, and interest denied her; compensatory damages, including all losses resulting from Defendants' unlawful actions; pre-judgment and post-judgment interest; punitive damages; statutorily imposed

damages; costs of suit, including reasonable attorney's fees as compensable and required under statute; common law remedies for discrimination, contractual breaches, infliction of emotional distress, and such further relief as the Court deems just and equitable.

> **BELL, SHIVAS & FASOLO, P.C.**
> 150 Mineral Springs Drive
> P.O. Box 220
> Rockaway, New Jersey 07866
> T (973) 442-7900
> F (973) 442-7990
>
> Attorneys for Plaintiff
> Christina Klemser
>
> _____
>
> Joseph J. Bell, Esq.

Dated:    May 5, 2017

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

> **BELL, SHIVAS & FASOLO, P.C.**
> Attorneys for Plaintiff
> Christina Klemser
>
> _____
>
> Joseph J. Bell, Esq.

Dated:    May 5, 2017

## DESIGNATION OF TRIAL COUNSEL

Joseph J. Bell, Esq. is designated as trial counsel in this matter on behalf of the Plaintiff.

> **BELL, SHIVAS & FASOLO, P.C.**
> Attorneys for Plaintiff
> Christina Klemser
>
> _____
> Joseph J. Bell, Esq.

Dated:   May 5, 2017

## CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not currently being litigated before any Court and the matter is not the subject of any alternative dispute resolution proceedings.

The matters arise, however, out of the three aforementioned EEOC complaints as referenced above.  Only one matter is still pending before the EEOC related to the 2017 performance review in New Jersey.

> **BELL, SHIVAS & FASOLO, P.C.**
> Attorneys for Plaintiff
> Christina Klemser
>
> _____
> Joseph J. Bell, Esq.

Dated:   May 5, 2017

# EXHIBIT A



## Evonik Cyro LLC Releases New Acrylic Polymers Brochure for Medical Device Applications

**Parsippany, NJ — For Immediate Release** — Evonik Cyro LLC announces the release of its new 11-page acrylic polymers brochure for the medical industry featuring its CYROLITE®, ACRYLITE® and XT® polymer brands. Written specifically for designers and engineers of medical devices and equipment, the brochure provides details on the polymers' key properties, chemical resistance, sterilization, processability and more.

As explained in the brochure, Evonik Cyro's newest acrylic polymer, ACRYLITE® MD acrylic polymers, are ideal for medical diagnostic applications due to their superior optical clarity, transparency and UV transmission. CYROLITE compounds and XT polymers are also outlined in the literature. Both are transparent, impact-modified, acrylic-based multipolymer compounds that are perfect for thin-walled and difficult-to-mold multicavity parts that require exceptional chemical resistance, high heat deflection temperature and impact strength.

For a free copy of Evonik Cyro's new medical brochure , call 800-631-5384 or e-mail cyro.polymers@ evonik. com or visit www.cyro.com and download a copy of "Acrylic Polymers for the Medical Industry".

### Company Information

Evonik Cyro LLC is an Evonik Degussa Corporation group company. Headquartered in Parsippany, NJ, Evonik Cyro is a leading manufacturer of acrylic sheet and molding compounds, and bulk and performance monomers. Cyro manufactures and markets its acrylic sheet and molding compounds under the ACRYLITE® trade name in the Americas. These same products are manufactured and marketed under the PLEXIGLAS® trade name on the European, Asian, African and Australian continents.

Evonik Industries is the creative industrial group from Germany which operates in three business areas: Chemicals, Energy and Real Estate. Evonik is a global leader in specialty chemicals, an expert in power generation from hard coal and renewable energies, and one of the largest private residential real estate companies in Germany. Our strengths are creativity, specialization, continuous self-renewal, and reliability. Evonik is active in over 100 countries around the world. In its fiscal year 2008 about 41,000 employees generated sales of about Euro 15.9 billion and an operating profit (EBITDA) of more than Euro 2.2 billion.

**Disclaimer**

In so far as forecasts or expectations are expressed in this press release or where our statements concern the future, these forecasts, expectations or statements may involve known or unknown risks and uncertainties. Actual results or developments may vary, depending on changes in the operating environment. Neither Evonik Industries AG nor its group companies assume an obligation to update the forecasts, expectations or statements contained in this release.

###

**For more information, contact:**

Gail J. Wood

Evonik Cyro LLC.

973.541.8754

gail.wood@evonik.com

**EDITOR STYLE NOTE:**

The ACRYLITE, CYROLITE and XT trademarks are all caps.